IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOUGLAS MARTINEZ<br>    Plaintiff,<br>v.<br><br>COOK COUNTY, a municipal corporation,<br>THOMAS DART, Sheriff of Cook County, in<br>his official capacity,<br>OFFICER HOPKINS, Star # 3226<br><br>    Defendants. | 11 C 1794<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Bifurcate Plaintiff's 42 U.S.C. § 1983 claims and Defendants' Motion to Stay Discovery and Trial on those claims. Plaintiff Douglas Martinez ("Martinez") filed a complaint against Cook County, the Sheriff of Cook County, and Cook County Sheriff Correctional Officer Hopkins (collectively "Defendants") asserting that each of the Defendants violated his constitutional rights. (Doc. 1). On April 25, 2010, Martinez was detained at the Cook County Department of Corrections (known as the Cook County Jail). (Doc. 1 at ¶ 12). While detained, Martinez was attacked by fellow inmates on Tier 2A of Division XI of the Jail, causing him severe physical and emotional damages. (Doc. 1 at ¶ 19).

Martinez alleges multiple theories as to why these attacks on him were able to occur. First, Martinez alleges that Officer Hopkins, who at that time was responsible for watching Tier 2A, acted with deliberate indifference to Martinez's safety by leaving the Tier of inmates unguarded and unsupervised, knowing that inmate-on-inmate violence would foreseeable result. (Doc. 1 at ¶¶ 13-

16). Martinez claims that Hopkins left the Tier unsupervised so that she could simultaneously guard another tier, a practice known as "cross-watching." (Doc. 1 at ¶ 16). Martinez asserts that Officer Hopkins knew it is impossible to safely watch two separate tiers of inmates at the same time, as well as the dangers imposed by leaving a tier of detainees unguarded. (Doc. 1 at ¶ 16). Second, Martinez alleges that Cook County and its Sheriff have a widespread pattern and practice of allowing cross-watching, despite knowing that this practices poses serious risks to inmate and detainee safety. (Doc. 1 at ¶ 17). Finally, Martinez alleges that Cook County has deliberately allowed cross-watching to continue either because of an express funding policy or because of a general underfunding of the Jail by the County. (Doc. 1 at ¶ 18). Martinez alleges each of his theories in the alternative, thus leaving open the possibility that the County could be found liable to Martinez, while Officer Hopkins could be found not liable, or qualifiedly immune.

Defendants move to bifurcate Martinez's claims against the County arising under *Monell v. Department of Social Servs.,* 436 U.S. 658 (1976), and to stay discovery and trial on those claims pursuant to Federal Rule of Civil Procedure 42(b) . Under Rule 42(b) the Court has discretion to decide claims or issues in separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed.R.Civ.P. 42(b); see *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). For the reasons set forth below, Defendants' Motion to Bifurcate is denied. Defendants' Motion to Stay Discovery and Trial on Martinez's *Monell* claims is also denied, and discovery is ordered consistent with this opinion.

Under the doctrine of *Monell*, a plaintiff in a § 1983 suit may assert charges against the individual actors whom he claims violated his constitutional rights as well as against the relevant municipality. *Monell,* 436 U.S. 658; *see also, Thomas v. Cook County Sheriff's Dept.,* 604 F.3d 293, at 302-305 (7th Cir. 2010). A municipality can be liable under 42 U.S.C. § 1983 if the

unconstitutional act is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a government practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas*, 604 F.3d at 303. The Seventh Circuit has held that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Id.* at 305. Thus, under *Monell* a municipality may be liable for the actions of one of its officers acting in his official capacity, such as the Sheriff of Cook County, who is "at the apex of authority for the action in question," even if the particular officer executing the act is not individually liable. *Gernetzke v. Kenosha Unified School Dist. No. 1*, 274 F.3d 464, 468 (7th Cir. 2001) (Posner, J.). As this Court has said before, a plaintiff can succeed against a municipality under a *Monell* claim despite failing to prove that any particular individual defendant is liable for violating the plaintiff's constitutional rights so long as the two results are compatible. *See Cage v. City of Chicago*, No. 9 C 3078, 2010 WL 3613981, at *1 (N.D. Ill. Sept. 8, 2010).

Here, Officer Hopkins has asserted the affirmative defense of qualified immunity. (Doc. 20 at Page 6). This leaves open the real possibility that a jury could find the County liable under *Monell* while holding Officer Hopkins not liable. If the proceedings were bifurcated, and Officer Hopkins to prevail in asserting her qualified immunity defense, it would be impossible to conclude whether the jury found that she acted in good faith despite having violated Martinez's constitutional rights or if the jury found no constitutional violation at all. If this hypothetical outcome were to occur in a bifurcated case, then the case would have to be relitigated on the *Monell* claims. Such an outcome would be a waste of judicial resources. Put another way, Martinez's constitutional claims against the County will not be disposed of irrespective of the outcome of a bifurcated case pursued in the first instance against Officer Hopkins individually. It is therefore in the interest of expediency,

economy and convenience that Martinez's claims proceed together as a single unified cause of action against all of the Defendants.

On August 25, 2011, this Court heard oral argument regarding bifurcation and the potential scope of any *Monell* discovery. At that time the Court asked Martinez to provide a proposed discovery plan and advised the Defendants that they could respond with a counter-plan or object to Martinez's proposal if they found it problematic. Martinez filed a proposed discovery plan to which the Defendants object. Having decided not to bifurcate Martinez's claim against Officer Hopkins from his claims against the County, the Court now sets out what discovery Martinez is entitled to seek from the Defendants.

District courts have broad authority and discretion over matters relating to discovery. *See Patterson v. Avery Dennison Corp*, 281 F.3d 676, 681 (7th Cir. 2002); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001); *see also,* Fed.R.Civ.Pro. 23(b) ("...the court may order discovery of any matter relevant to the subject matter involved in the action," and is empowered to limit discovery if "the discovery sought is unreasonably cumulative or duplicative..." or if "the burden or expense of the proposed discovery outweighs its likely benefit..."). Martinez's proposed discovery plan includes three requests for the production of certain documents. He also seeks to depose between one and four witnesses. As to the production of documents, the defendants object to each of Martinez's requests as overly broad, unduly burdensome and vague.

First, Martinez seeks "any and all tier sheets for the Cook County Jail for one year prior to this incident," in which Martinez believes incidents of cross-watching are recorded. (Doc 31 at ¶ 8(a)). Defendants' point out that the Cook County Jail houses 10 divisions, within which there are approximately 210 tiers. (Doc. 36). On a daily basis there are three shifts of correctional officers per tier. (Doc. 36). The rough arithmetic suggests that Martinez's request would result in the

production of approximately 229,950 tier sheets.

The production and inspection of that number of documents is unreasonable and overly cumbersome in light of the allegations. Given the nature of cross-watching, however, tier sheets for only one tier would be inadequate. Therefore, Martinez's discovery of tier sheets for the Cook County Jail is limited to the Tier he was detained on, Tier 2A, and the two Tiers directly above and below that Tier for the year prior to the incident on April 25, 2010. Because cross-watching requires that the supervising officer be able to view two tiers at once, it should be sufficient to obtain the records for the Tier in question as well as the two Tiers that can be watched simultaneously. Limiting the scope of the request in this manner results in the far more reasonable and manageable production of roughly 3,285 tier sheets (saving the County the production of approximately 226,665 tier sheets).

Next, Martinez requests "discovery related to the number of jail guards employed at the jail in the year prior to the incident, and specifically in this division, and how that compares to any statutory or regulatory standards." (Doc. 31 at ¶ 8(b)). Defendants acknowledge that the County provides funding for the jail, but argues that the Sheriff would not have the relevant information readily available to address Martinez's request. Furthermore, Defendants argue that it is unduly burdensome for the County to produce these records because the County funds not only correctional officers, but also other, non-correctional, County personnel. The Court is not persuaded by Defendants' argument that it is unduly burdensome to produce records relating to the number of jail guards employed in Division XI in the year prior to the incident. Because Martinez's request is in part specified to the Division of the Jail in which he was detained, the Court limits his request to that Division. The portion of Martinez's request relating to how the number of correctional officers employed in the Division compares to any statutory or regulatory standards is, as the Defendants

argue, vague.  Martinez is free to conduct any research he feels necessary into the statutory or regulatory standards that pertain to correctional officers.  However, he cannot dragoon the Defendants into doing this work for him.  Accordingly, Martinez is entitled only to discover the number of jail guards employed in Division XI of the Cook County Jail for the year prior to the incident.

Third, Martinez requests "discovery related to the funding of the jail in the year prior to this incident, and specifically in the division where this incident occurred, and how that compares to any statutory or regulatory standards." (Doc. 31 at ¶ 8(c)).  Defendants object to this request for the same reasons they object to the request regarding the number of guards employed at the Jail.  To the extent that funding information may be available with respect to Division XI only, such information standing alone would be of little use to Martinez as he would be unable to compare the funding of that Division against the funding of other divisions.  The County should have records showing how the Cook County Jail is funded, and Martinez is entitled to discovery of that information.  However, as above, he is not entitled to make the County do his research or analysis, and he may not use discovery to deputize the County, his adversary in this case, into acting as his legal aid.  He is, therefore, not entitled to discovery relating to how the funding of the Jail compares to any statutory or regulatory standards.

Finally, Martinez proposes that he can prove his *Monell* claim by deposing between one and three Rule 30(b)(6) witnesses, in addition to one expert witness retained by him.  Martinez asserts that one witness should be able to testify about all three of the discreet areas outlined above, but that it may take up to three witness–one for each area.  He proposes that a fourth witness may be required to give expert testimony to dispute or clarify any of the claims made by the other witness or witnesses.  Defendants object to Martinez's proposal as lacking in specificity.  According to Rule

30(b)(6) of the Federal Rules of Civil Procedure a party seeking testimony from a deponent "must describe with reasonable particularity the matters for examination." Fed.R.Civ.Pro. 30(b)(6). Martinez may depose up to three 30(b)(6) witnesses in accordance with the limited scope of discovery the Court orders here. Under Rule 30(b)(6) Martinez may seeks information from deponents about tier sheets and cross-watching on Tier 2A of Division XI of the Cook County Jail and each of the Tiers directly above and below 2A, about information related to the number of guards employed in Division XI, and about the funding of the Cook County Jail. Having narrowed Martinez's requests for production, the Court finds that the topics upon which witnesses may be deposed are sufficiently precise and not otherwise overly burdensome.

For the reasons set out above, Defendant's Motion to Bifurcate Martinez's §1983 Claims and to Stay Discovery and Trial on Those Claims is denied. Martinez may conduct discovery on his claims against Cook County arising under *Monell* in a manner not inconsistent with this opinion.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 4, 2011